## McKENNA v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. November 22, 1898.)

1. GREATER NEW YORK CHARTER—JUSTICES' CLERKS—COMPENSATION.

Under Greater New York Charter, § 1384, providing that until midnight of January 31, 1898, the justices' courts and justices' clerks and assistant clerks shall continue to perform all the duties invested in them on December 31, 1897, an assistant clerk of a justice's court of Brooklyn, who so continues his duties, is entitled to pay to the end of January.

2. SAME—CONTINUANCE IN OFFICE.

Brooklyn City Charter, tit. 21, § 14 (Laws 1888, c. 583), empowered a justice of the peace to appoint a clerk of his court, and such other assistants as the common council might authorize, all to serve during the pleasure of the justice. Greater New York Charter, § 1373, provides that the justice elected or appointed for each district shall appoint a clerk and an assistant clerk; that the clerks, assistant clerks, etc., of the justices' courts of the First, Second, and Third districts of Brooklyn, who shall be in office on January 1, 1898, shall continue until the expiration of their respective terms in like capacities as officers of the municipal court; and that the justices shall on or before January 30, 1898, also appoint the officers necessary to attend the court in each district, not exceeding three. Held, that only one assistant clerk appointed by a justice under the Brooklyn City Charter was to be continued in office, and

that, therefore, where a justice had more than one, those other than the one designated assistant cannot claim salary after January 31, 1898.

Goodrich, P. J., dissenting.

Appeal from trial term.

Action by James McKenna against the city of New York. From a judgment for plaintiff, defendant appeals. Modified.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

R. Percy Chittenden, for appellant.

Albert A. Wray, for respondent.

CULLEN, J. The plaintiff sues for his salary as assistant clerk in the court of the justice of the peace of the First district of the city of Brooklyn, for the months of January and February, 1898. By section 14, tit. 21, of the charter of the city of Brooklyn (chapter 583, Laws 1888), a justice of the peace was empowered to appoint a clerk of his court, and such other clerks or assistants as the common council might authorize, all to serve during the pleasure of the justice. Under authority of the common council of that city, the plaintiff was, on January 1, 1896, appointed by Jacob Neu, a justice of the peace, assistant clerk of his court, at a salary of $1,000 a year, and remained as such until the consolidation of the city with the city of New York. He contends that, by the provisions of the Greater New York charter, he has been continued in office, and is entitled to his salary. The defendant answered, admitting the allegations of the complaint, and setting up as a separate defense that the plaintiff was retained in office by the justice in violation of section 1542 of the charter, which provides that it shall be the duty of all heads of departments of the city, and officers charged with the duty of expending or incurring obligations, to regulate their expenditures so that the same shall not in any one year exceed the appropriation for that purpose made by the board of estimate and apportionment.

Without question, the plaintiff, under the terms of section 1384, was continued in office until the end of January. Whether he was continued beyond that time depends on the construction of section 1373. By this section it is provided that the justice elected or appointed for each district shall appoint a clerk and an assistant clerk, who shall receive, in the boroughs of Manhattan, Brooklyn, and the Bronx, an annual salary of $3,000. Then follows:

"The clerks, assistant clerks, stenographers, interpreters, and attendants of the district courts in the city of New York, and of the justices' courts of First, Second and Third districts of the city of Brooklyn, who shall be in office on the first day of January, 1898, shall continue until the expiration of their respective terms, in the like capacities as officers of the said municipal court."

The section then authorizes a justice to appoint attendants to the court not exceeding three, a stenographer, and in each district of the borough of Manhattan an interpreter. The salary and terms of these latter officers are prescribed, and the justice is authorized to remove any of them after notice and hearing. It is contended for the defendant that, as the plaintiff held his office during the pleasure of the justice, he had no official term, and that his case therefore does not

fall within the provisions of the section. The case of People v. Tierney, 31 App. Div. 309, 52 N. Y. Supp. 871, is cited in support of this claim. It was there said, in reference to this section, by Mr. Justice Chase, in an opinion adopted by the appellate division:

"This provision does not include the relator. The word 'term,' when used with reference to the tenure of office, ordinarily refers to a fixed, definite time, and does not apply to appointive offices held at the pleasure of the appointing power."

This declaration was unnecessary to the decision of the case, and we are not prepared to express our opinion upon the question; nor is it necessary to decide it in the present case. If the plaintiff was entitled by law to hold his office and receive its compensation, we do not believe that any action by the board of estimate and apportionment could affect his right. But, in our view, it was not the intention of the section cited to continue in office all officers of the justices' courts in the particular districts named. It will be observed that the section provides a permanent plan for the administration of the municipal court. The exact number of clerks to be provided for a court is prescribed,—a clerk and an assistant clerk,—as are also their salaries. Then is found the direction for the continuance in office of certain old officers, and then provision for the appointment of a definite number of attendants, stenographers, and, in certain cases, interpreters. While the direction for the continuance in office in certain cases is interjected in the body of the section, instead of being found at its end, still, we think, it is to be construed in connection with the provisions made for appointments to such courts. When it is declared that "the clerks, assistant clerks," etc., shall be continued in office, there is meant the clerks, assistant clerks, etc., authorized by the section, to wit, one clerk, one assistant clerk, and no more than three court attendants. The legislature evidently determined that this official force was sufficient for the administration of any of the courts. No greater force of clerks or attendants would be requisite for the present than for the future. All these officers in the case of justices' courts of the city of Brooklyn held their offices only during the pleasure of the appointing power. Being liable thus to have their official terms terminated at any time, they had no particular equity to be continued in office after the legislature had concluded that their offices were unnecessary. At the time of the consolidation, there appear to have been in Justice Neu's court, besides the clerk, four assistant clerks, with differing salaries. In our view of the construction of the statute, only one assistant was to be continued in office. The justice could designate that assistant; but the offices of the others than the one so designated were abolished on the 31st of January, 1898.

The judgment appealed from should be modified by reducing the recovery to the sum of $83.33, and, as modified, affirmed, without costs of this appeal to either party. All concur, except GOODRICH, P. J., dissenting.

GOODRICH, P. J. (dissenting). I am not able to agree with Mr. Justice CULLEN that the clause of section 1373 which relates to the

continuance in office of the clerks and assistant clerks of justices' courts in Brooklyn who were in office on January 1, 1898, does not cover the office of the plaintiff. There are three clauses of the section which are to be considered. They read as follows, the division being my own:

(1) "There shall be in and for each district a clerk of said court and in each district in the boroughs of Manhattan, Brooklyn and the Bronx an assistant clerk who shall be appointed by the justice elected or appointed from said district, as hereinbefore provided, and shall hold office for the term of six years from the date of appointment."

(2) "The clerks, assistant clerks, stenographers, interpreters and attendants of the district courts in the city of New York and of the justices' courts of the First, Second and Third districts in the city of Brooklyn, who shall be in office on the first day of January, 1898, shall continue until the expiration of their respective terms in the like capacities as officers of the said municipal court."

(3) "The said justices shall in like manner, on or before the thirtieth day of January, eighteen hundred and ninety-eight, also appoint the officers necessary to attend the court in each district, not exceeding three, at an annual salary of one thousand dollars, and a stenographer in and for each district at an annual salary of two thousand dollars, and in and for each district in the borough of Manhattan an interpreter at an annual salary of twelve hundred dollars. Each of said attendants, stenographers and interpreters shall be appointed for two years or to fill the residue of an unexpired term. The said justices may remove any of said attendants, stenographers or interpreters, provided that before removal such officers shall have notice of the cause of their proposed removal and an opportunity to make an explanation; and the reasons for any removal shall be briefly entered on such minutes."

The section, as Mr. Justice CULLEN has said, "provides a permanent plan for the administration of the municipal court." The first clause provides generally for the appointment of clerks and assistant clerks, and the third clause for the appointment and removal of other attendants. I think that the first clause relates both to those clerks and assistant clerks who were in office on January 31, 1898, and their successors, and to those who should be appointed by the seven newly-appointed justices, for their respective districts. All new appointees are to hold office for a term of six years, and they are required to file bonds, and not to engage in any other business. The section defines them as clerks and assistant clerks of the municipal court, and it was intended that they should ultimately constitute the working clerical force of the court. But as there were already clerks, assistant clerks, and other attendants in office, appointed by the former justices, the legislature, by the second clause, evidently intended not to interfere with such incumbents, but to retain them in office until the expiration of their terms, when their successors are to be appointed as provided in the first clause. They are spoken of in the second clause, not as clerks and assistant clerks of the municipal court, but as clerks and assistant clerks of the district courts of the First, Second, and Third districts of the city of Brooklyn, who shall be in office on the 1st day of January, 1898, and declares that they shall continue until the expiration of their respective terms, in the like capacities as officers of the municipal court. Here is a distinct definition and differentiation of the two classes of officers; the first consisting of those persons who are to be appointed as clerks and assistant clerks of the municipal court, and the second consisting

of those persons who were clerks and attendants of the old district courts already in office. The latter were to be transferred into the municipal court, and retain their offices until the expiration of their terms. I think it is evident that the legislature intended by the first clause to provide for the appointment of the clerks and assistant clerks in each district by the justice elected or appointed, whenever there was a vacancy, and by the second clause, in distinction from the first, to recognize and continue in office the existing incumbents of such positions as were already filled. There is no conflict or inconsistency between the two clauses.

Again, I think the learned justice misconstrues the section when he says that it "authorizes a justice to appoint attendants to the court, not exceeding three, a stenographer, and, in each district of the borough of Manhattan, an interpreter." This is required to be done by all the justices, not by the individual justice in each district. In the first-quoted clause of the section relating to the appointment of clerks or assistant clerks, the words used are "the justice elected or appointed from said district"; and in a clause not quoted, "each justice"; but in the third quoted clause, relating to the appointment and removal of attendants, stenographers, and interpreters, the words used are, "The said justices" shall appoint and remove. I think this requires the action of all or a majority of the justices, either in their separate capacities or in the board created by section 1374, which provides that "the justices of said court shall constitute the board of justices of the municipal court and discharge the functions thereof."

Some light may be thrown upon the question by reference to other provisions of the charter. So careful was the legislature not to disturb existing tenures of office that there is a general provision in section 1536 that "all the clerical and other subordinate forces, not subject to removal without cause, in the public employ," shall continue in office unless their positions are vacated by the other provisions of the charter; and even then it is declared that the clerks and subordinates of departments that are reconstructed under the same or other names shall continue in office. I do not mean to intimate that the word "department," as used in the charter, includes the municipal court; but I refer to those provisions as indicating, by analogy, that it was the intention of the act not to disturb existing tenures of office. It is certain that the words "clerical forces in the public employ" do include the plaintiff.

Mr. Justice CULLEN expresses no opinion as to the time the plaintiff's term of office expires, but I think the question has an important bearing upon the subject. The plaintiff was appointed under section 14 of chapter 583 of the Laws of 1888, which gave the justices power "to appoint a clerk of their respective courts; also to appoint such other clerks, assistants and stenographers as the common council may authorize, all such appointees to serve during the pleasure of said justice"; and I assume that authority for the appointment of the plaintiff was given by the common council. What, then, is the pleasure of the appointing justice? Not discussing the question whether he could irrevocably appoint the plaintiff for the definite term

of his own office, and thus defeat the exercise of his pleasure if oc-casion for removal should arise, he appointed the plaintiff to office for some period.    He has continued to permit him to hold office; The plaintiff was in office on January 31, 1898.    The justice has, by the pay roll contained in the record, certified to the comptroller of the city that the plaintiff, for the months of January and February, was actually in office as assistant clerk, at the salary of $1,000 per annum.    Evidently, so far as the pleasure of the justice can continue the plaintiff in office, he still remains undisturbed; and I do not see how he can be declared out of office until he has been removed by the justices, under the provisions of the section in question.

I think the judgment, as appealed from, should be affirmed.