CHAMSKI *v.* WAYNE COUNTY BOARD OF AUDITORS.

1. COURTS—PROBATE REGISTERS—REMOVAL—PRESIDING JUDGE.

Under statute designating term of a probate register as that for which the judge of probate making the appointment shall have been elected unless sooner removed by the judge of probate and, in counties having more than one judge of probate, requiring an annual designation of one of them as presiding judge and lodging solely in him the power of removal of court employees, the presiding judge would be the only one to possess the removal power (3 Comp. Laws 1929, § 13864, as amended by Act No. 226, Pub. Acts 1933, §§ 13875, 13876).

2. OFFICERS—TERM OF OFFICE—CONSTRUCTION OF STATUTES.

Where there are two modes of construing a statute relating to the term of a public officer, that mode should be followed which fixes the term at the shortest period.

3. COURTS—DEPUTY PROBATE REGISTERS—TERM OF OFFICE—PRESIDING JUDGE.

The term of office of a deputy probate register is subject to termination by the presiding probate judge (3 Comp. Laws 1929, § 13864, as amended by Act No. 226, Pub. Acts 1933, §§ 13875, 13876).

4. OFFICERS—CONSTITUTIONAL LAW—LEGISLATURE.

An office created by the Constitution and having a definite term cannot be vacated before the expiration thereof without a trial of some sort, but offices created by the legislature may be filled, vacated, or abolished as the legislature may prescribe.

5. SAME—REMOVAL WITHOUT CAUSE.

The unrestricted power of removal expressed in a statute gives authority to dismiss an officer without assigning any cause.

6. COURTS—DEPUTY PROBATE REGISTERS—REMOVAL.

Deputy probate registers may be removed at the discretion of the presiding judge of probate under statute fixing term of office as that for which judge of probate making the appointment had been elected "unless sooner removed by the judge of probate" (3 Comp. Laws 1929, § 13864, as amended by Act No. 226, Pub. Acts 1933, §§ 13875, 13876).

7. SAME—LACHES—EVIDENCE.

Since laches is an affirmative defense and no testimony bearing on the question was offered aside from fact delay of almost a year between plaintiff deputy probate register's removal from office before filing bill to have discharge declared illegal and fact that another deputy occupied desk and performed duties previously performed by plaintiff, holding that he was not guilty of laches held, proper (3 Comp. Laws 1929, § 13864, as amended by Act No. 226, Pub. Acts 1933, §§ 13875, 13876).

8. EQUITY—LACHES.

Mere lapse of time, without a showing of prejudice, will not constitute laches.

9. STATUTES—POPULATION AS BASIS FOR CLASSIFICATION.

If it is a reasonable and logical basis of classification, considering the subject of the legislation, a specified population may be made the test of the applicability of a general legislative act.

10. SAME—CLASSIFICATION—SINGLE COUNTY IN CLASS.

If the classification embodied in a statute is founded on correct principles, it is no objection that a class may contain but one county at the time the act is passed.

11. SAME—ADDITIONAL PROBATE JUDGES—SELECTION OF PRESIDING JUDGE.

Statute providing for additional probate judges according to population of counties and that in counties having four judges choice of presiding judge should be in a manner different from that used by all other probate courts *held*, based on reasonable classification and valid (Const. 1908, art. 7, § 14; 3 Comp. Laws 1929, § 13864, as amended by Act No. 226, Pub. Acts 1933, §§ 13875, 13876).

12. CONSTITUTIONAL LAW—SUPREME COURT—REASONABLE CLASSIFICATION.

Supreme Court has no power to inquire into the wisdom of legislative action involving classification of number of probate judges in a county according to population since there is a reasonable basis for the classification (3 Comp. Laws 1929, § 13864, as amended by Act No. 226, Pub. Acts 1933).

13. STATUTES—OPEN END CLASSIFICATION ACCORDING TO POPULATION.

A class of cities or counties based upon population may be valid though it embraces but one city or county, if others may come into the class on attaining the specified population.

14. SAME—ADDITIONAL PROBATE JUDGES—OPEN END CLASSIFICATION.

Statute providing for additional probate judges according to population and providing a specific method for its application to other counties as they acquired necessary population *held*, not rendered unconstitutional by reason of inclusion of clause requiring that selection of presiding judge be made within 15 days of effective date of act or proviso that a county which had failed to elect an additional probate judge under the statute by a specified date should not be entitled to elect any additional judge, as statutes are interpreted to give effect to all provisions and, where that is impossible, to give effect to what was manifestly the intention of the legislature (3 Comp. Laws 1929, § 13864, as amended by Act No. 226, Pub. Acts 1933).

Appeal from Wayne; Webster (Arthur), J. Submitted January 6, 1939. (Docket No. 76, Calendar No. 40,358.) Decided March 9, 1939. Rehearing denied April 25, 1939.

Bill by Frank J. Chamski against John C. Cowan, Edward H. Williams, Ray D. Schneider, as members of the Wayne County Board of Auditors, Joseph P. Sumeracki, County Treasurer, Joseph A. Murphy and Thomas C. Murphy, Probate Judges, for declaration of invalidity of a statute and an injunction restraining payment of salary. Decree for plaintiff. Defendants appeal. Reversed and bill dismissed.

*Sweetman G. Smith,* for plaintiff.

*Duncan C. McCrea, William L. Brunner,* and *Samuel Brezner,* for defendants.

POTTER, J. Plaintiff was appointed to the office of deputy register of the probate court of Wayne county by Hon. Edward Command, judge of probate, March 14, 1935. Judge Command had been chosen by his colleagues as the judge having the power, during 1935, of appointment, nomination, and removal, under the terms of Act No. 226, Pub. Acts 1933 (Comp. Laws Supp. 1935, § 13864, Stat. Ann. § 27.442). He was the senior probate judge in point of continuous service and would have had the sole power of appointments and removals under the act (3 Comp. Laws 1929, § 13864) in effect prior to the enactment of Act No. 226, Pub. Acts 1933, if Act No. 226, Pub. Acts 1933, was unconstitutional. Defendant Joseph A. Murphy was selected to act as presiding probate judge for 1936, and defendant Thomas C. Murphy for 1937.

In December, 1936, Judge Joseph A. Murphy asked plaintiff to resign, saying, "There has been a lot of political pressure," which he could not ignore. Plaintiff refused to resign, contending Judge Murphy could not remove him since he had been appointed by Judge Command. December 14, 1936, plaintiff received a formal letter of removal, effective December 31, 1936, from Judge Joseph A. Murphy. There is no showing plaintiff's work was unsatisfactory or other cause existed for his removal.

Plaintiff reported for work January 2, 1937, and found another man had been appointed in his place. Plaintiff thereafter presented himself at the probate office on several occasions and offered to continue his services.

December 27, 1937, plaintiff filed a bill in chancery alleging that Act No. 226, Pub. Acts 1933, was unconstitutional and void, his discharge illegal, and, under 3 Comp. Laws 1929, §§ 13864, 13875, 13876 (Stat. Ann. § 27.453, 27.454), only Judge Command could remove him from office and then only for cause after proper hearing. Plaintiff asked that the board of county auditors and the county treasurer be enjoined from paying the compensation attached to the office to any other person than himself.

Defendants, Judges Joseph A. Murphy and Thomas C. Murphy, of the Wayne county probate court; John C. Cowan, Edward H. Williams, and Ray D. Schneider, members of the board of auditors of Wayne county; and Jacob P. Sumeracki, Wayne county treasurer, answered, defended the constitutionality of the act, asserted the validity of plaintiff's discharge, and interposed the defense of laches by reason of plaintiff's failure to file his bill of complaint until a year after his discharge.

On filing the bill of complaint, the circuit judge issued an order directing defendants to show cause why a temporary injunction as prayed should not issue, and during the pendency thereof restrained defendants from in any way, manner, or form paying or approving the compensation attached to the office of deputy probate register to any other person. On the hearing, the circuit judge denied the motion to dismiss, without prejudice, and reserved decision on the order to show cause, without dissolving the restraining order.

On trial, the circuit judge determined that Act No. 226, Pub. Acts 1933, was valid; that plaintiff had been appointed to office for a definite term and, whether removable either by Judge Command or Judge Murphy, he could be removed only for cause; that the removal power was not exercised in a proper manner and that plaintiff was not legally removed; that laches is an affirmative defense and no testimony of laches was offered, except that the bill was not filed until December 27, 1937, and meanwhile another deputy probate register occupied the desk formerly occupied by plaintiff and performed his duties; and that plaintiff was not barred from relief by laches.

Decree was entered adjudging the removal from office and discharge of plaintiff illegal and ordering his reinstatement. Compensation accruing to plaintiff during his illegal discharge was referred to the board of auditors for audit.

Petition for rehearing was filed June 6, 1938, with supporting affidavit setting up that the county of Wayne had expended $3,795 during the period of plaintiff's delay by reason thereof. Rehearing was denied.

Defendants appeal, claiming the court erred in holding the removal of plaintiff could be only for cause, and in holding plaintiff was not barred from relief by laches. Plaintiff cross-appeals, claiming the trial court erred in finding Act No. 226, Pub. Acts 1933, constitutional.

3 Comp. Laws 1929, § 13876 (Stat. Ann. § 27.454), provides:

"The probate judge or judges of any county having a probate register may appoint one or more deputy probate registers who shall have such compensation as shall be fixed by the board of supervisors of said county. The term of office of such deputy probate registers and their powers shall be the same as those prescribed by law for probate registers."

3 Comp. Laws 1929, § 13875 (Stat. Ann. § 27.453), provides:

"In every county in this State the judge of probate may appoint a probate register, who shall hold such office during the term for which the judge of probate making the appointment shall have been elected, unless sooner removed by the judge of probate."

3 Comp. Laws 1929, § 13864, as amended by Act No. 226, Pub. Acts 1933 (Comp. Laws Supp. 1935 § 13864, Stat. Ann. § 27.442), provides:

"In counties having one hundred eighty thousand inhabitants there shall be two judges of probate, and in counties having seven hundred fifty thousand inhabitants, or more, there shall be four judges of probate, two of whom shall be elected at each alternate biennial election for terms of four years, and in counties having five hundred thousand inhabitants there shall be three judges of probate, as hereinafter provided. They shall have equal powers, duties and

compensation, except that the power of appointment, nomination and removal of the several employees provided by law for such courts, and the offices connected therewith, and the general direction and control of the business of such court, including the division of the work between the judges, shall be vested in counties having less than seven hundred fifty thousand inhabitants in the judge having served for the longest period continuously, and, in counties having seven hundred fifty thousand inhabitants, or more, in the judge who shall be chosen by the several judges in any such county, or, in the case no judge shall receive a majority vote of such judges, then in the judge of said court selected by the governor: *Provided, however,* That in counties having seven hundred fifty thousand inhabitants, or more, no judge shall be eligible to serve in such capacity for a longer period than one year during his term of office. A selection as herein provided shall be made within fifteen days of the effective date of this act. The judge so selected shall exercise the duties and powers herein provided until January one, nineteen hundred thirty-four. Thereafter a similar selection shall be held by January fifteenth of each year and the judge so selected shall exercise the powers and duties herein granted for a period of one year from the date of his selection. Whenever the United States census shall show that any county has one hundred eighty thousand inhabitants and has but one judge of probate, the additional office first herein provided for shall be deemed to be created and vacant, and whenever the United States census shall show that any county has five hundred thousand inhabitants and has but two judges of probate, the additional office next herein provided for shall be deemed to be created and vacant, and whenever the United States census shall show that any county has seven hundred fifty thousand inhabitants the additional office next herein provided for shall be deemed to be created and vacant, which vacancy or vacancies shall be filled

by appointment of the governor and the person so appointed shall hold office until his successor is elected and qualified. At the next general November election a successor to the additional judge herein provided for shall be elected to hold office until the general election following, at which election his successor shall be elected and hold office for the full term of four years from and after the thirty-first day of December following and until his successor is elected and qualified. Nothing contained herein shall be construed to affect the tenure of office of those judges of probate or their successors heretofore elected and qualified: *Provided,* That any county that has failed to elect an additional probate judge, or judges, under this section, prior to July one, nineteen hundred thirty-two, shall be not entitled to elect any additional judge, or judges, under the provisions of this section.''

Act No. 226, Pub. Acts 1933 (amending 3 Comp. Laws 1929, § 13864), provides the so-called ''presiding judge'' shall have the power of removal. This seems to divest any other probate judge of power to remove from office. 3 Comp. Laws 1929, § 13875, which governs the term of office of probate registers, and their deputies, by reference, must refer to the *presiding* probate judge when it says ''shall hold such office during the term for which the judge of probate making the appointment shall have been elected, *unless sooner removed by the judge of probate,*'' since the only judge of probate possessing removal power is the presiding judge.

Where there are two modes of construing a statute, that should be followed which fixes the term at the shortest period.

''One of the most approved rules is, that of two possible modes of construing the statute, that one

should be followed which fixes the term at the shortest period. This principle has been illustrated in interpreting a statute providing that a stenographer appointed by a judge 'shall hold his office during the term of the judge appointing him.' Although it was possible to assert that the appointee should hold office for the term for which the appointing judge had been elected, it was decided that the act meant that the stenographer should go out of office when the judge making the appointment went out, this being the shorter of the two alternatives.'' 22 R. C. L. p. 550, § 250.

See, also, *State, ex rel. Major, v. McKay,* 249 Mo. 249 (155 S. W. 396, Ann. Cas. 1914 D, 97) ; 23 Am. & Eng. Encyc. Law (2d Ed.), p. 409; 29 Cyc. p. 1396; Mechem, Public Offices and Officers, § 390; *People, ex rel. Eldred, v. Palmer,* 154 N. Y. 133 (47 N. E. 1084) ; *Dobkins* v. *Reece* (Tex. Civ. App.), 17 S. W. (2d) 81.

Applying this rule to the statute, we hold the deputy probate register's term is subject to termination by the presiding probate judge.

In *Hallgren* v. *Campbell,* 82 Mich. 255, 262 (9 L. R. A. 408, 21 Am. St. Rep. 557), this court stated that unless the power to remove without cause was expressly stated in a statute giving removal power, ''the presumption must be that the legislature intended that every officer appointed for a fixed period should be entitled to hold his office until the expiration of such period, unless removed therefrom for cause after a fair trial.'' The court relied upon *People, ex rel. Mead, v. Treasurer of Ingham County,* 36 Mich. 416, in which it was said:

''Our State system favors appointments for fixed periods, and almost entirely rejects the policy of removals at will.''

The "State system" referred to in the *Mead Case* was to be found in the statutes then in force. There are no prior decisions of this court to that effect. This statement was made incident to the construction of a statute *which gave no express power of removal* as given in the statute in question. Counsel for relator had attempted to show implied power to remove, in the face of another statute which gave the supervisors power to remove on the specific grounds of neglecting or refusing to report or to give bonds. The court said:

"It would therefore seem that the legislature meant to confer on the supervisors a power to remove on the two specified grounds, but had no intention to give the right on any other ground, or to delegate to the supervisors a discretionary general power to remove. The provision in the supervisors' act, * * * would be rendered entirely gratuitous if a general authority to remove were to be implied or should be considered as a consequence of the power to appoint."

In *Hallgren* v. *Campbell, supra,* 261, the court said:

"We have not found any case where an officer who was appointed for a fixed term (and when the power of removal was not expressly declared by law to be discretionary) has been held to be removable except for cause."

It is true that offices created by the Constitution and having a definite term cannot be vacated before the expiration thereof without a trial of some sort; but the legislative office or offices created by the legislature may be filled, vacated or abolished as the legislature may prescribe.

See Cooley, Constitutional Limitations (3d Ed.), p. 312; 1 Dillon, Municipal Corporations (3d Ed.), §§ 245, 250.

In *Lawrence* v. *City of Cincinnati,* 5 Ohio Dec. Reprint, 228 (3 American Law Record, 597) it was held where a municipal board appointed an officer for one year "unless removed from office by order of the board during said period," it was not an appointment for a fixed term, but one merely at the pleasure of the board and such officer might be removed at any time without cause.

See, also, *People, ex rel. Batey,* v. *Tierney,* 31 App. Div. 309 (52 N. Y. Supp. 871); *Ida County Savings Bank* v. *Seidensticker,* 128 Iowa, 54 (102 N. W. 821, 111 Am. St. Rep. 189, 5 Ann. Cas. 945); *Sommers* v. *State,* 5 S. D. 584 (59 N. W. 962); Mechem, Public Offices and Officers, §§ 448, 454, 459, 460; *State, ex rel. Attorney General,* v. *Hawkins,* 44 Ohio St. 98 (5 N. E. 228); *People, ex rel. Sims,* v. *Fire Commissioners of City of New York,* 73 N. Y. 437; *Field* v. *Commonwealth,* 32 Pa. 478.

"Where a statute unqualifiedly declares that a designated public agency shall have power to remove a particular officer from office, as where it declares that such agency 'may appoint and remove' the officer, it is usually concluded that no procedural condition attaches unless clearly implied in some other provision of the statute.    *    *    *    A like result follows where the statute places the removal within the unqualified individual discretion of a particular officer." Note, 99 A. L. R. p. 353, citing decisions from 18 States.

In *State, ex rel. Holland,* v. *Ledwith,* 14 Fla. 220, a constitutional provision that a sheriff "may be removed from office upon the recommendation of the governor and consent of the senate" was held to

give the governor and senate power of removal without cause, even though the sheriff was appointed for a fixed term.

See, also, *State, ex rel. Hatton,* v. *Joughin,* 103 Fla. 877 (138 South. 392).

In *People, ex rel. Brundage,* v. *Hansen,* 234 Ill. App. 483, it was held that a statute providing "the appointive members of said retirement board may be removed from office by the mayor of such city" gave the mayor unconditional and unlimited power to remove.

It was said in *Sevina* v. *Hickok,* 113 Cal. App. 301 (298 Pac. 116), that an authority in a city manager to "appoint and remove all subordinates in the police department, subject to the provisions hereinafter stated," implied that, with the exception of such "provisions," the power of removal was absolute with or without cause and without notice or hearing.

It is generally held that unrestricted power of removal expressed in a statute gives authority to dismiss without assigning any cause. *People, ex rel. Griffin,* v. *Lathrop,* 142 N. Y. 113 (36 N. E. 805); *Seeley* v. *Franchot,* 52 Misc. 302 (102 N. Y. Supp. 220); *Eckloff* v. *District of Columbia,* 135 U. S. 240 (10 Sup. Ct. 752); *United States, ex rel. Palmer,* v. *Lapp,* 157 C. C. A. 3 (244 Fed. 377); *Ham* v. *Board of Police of City of Boston,* 142 Mass. 90 (7 N. E. 540).

Where a statute provided for appointment of a commissioner of health for a term of two years "unless sooner removed or retired," and in another section provided all such appointees should "hold the office to which they may be appointed until the end of the mayor's term of office and until their successors are appointed and qualified, unless sooner

removed," it was held that an absolute power of removal was given, not restricted to cause. *State, ex rel. Gapen,* v. *Sommers,* 35 Neb. 322 (53 N. W. 146).

See, also, *State, ex rel. Sweeney,* v. *Stevens,* 46 N. J. Law, 344.

In *Trainor* v. *Wayne County Board of Auditors,* 89 Mich. 162, 170 (15 L. R. A. 95), it was said:

"And, although it is the undoubted policy of our State, and best in accord with our system of government, that officers should hold for fixed terms, and not be subject to removal at the will or caprice of the appointing power, yet *there is no constitutional objection to the conferring of such power of removal in offices not elective, and the legislature has undoubted authority to do so.*"

Although there is authority that an officer whose tenure is a fixed term cannot be removed without cause, notice, and hearing (*Todd* v. *Dunlap,* 99 Ky. 449 [36 S. W. 541]; *Rutter, Jones & Simays* v. *Burke,* 89 Vt. 14 [93 Atl. 842]; *Town of Davis* v. *Filler,* 47 W. Va. 413 [35 S. E. 6]; *Riffe* v. *Tinley,* 103 Ky. 631 [45 S. W. 1046]; *Ware* v. *State, ex rel. Poole,* 111 Miss. 599 [71 South. 868]; *Gracey* v. *City of St. Louis,* 213 Mo. 384 [111 S. W. 1159]; *Board of Hagerstown Street Commissioners* v. *Williams,* 96 Md. 232 [53 Atl. 923]), it has been held repeatedly that fixity of term is a mere circumstance indicating legislative intent and may be overthrown by other indicia of intent as well as by definite language. *Lacy* v. *Selectmen of Winchendon,* 240 Mass. 118 (133 N. E. 90); *People, ex rel. Gese,* v. *Whitlock,* 92 N. Y. 191; *State* v. *Mitchell,* 50 Kan. 289 (33 Pac. 104, 20 L. R. A. 306).

In *Drolshagen* v. *County of Wayne,* 283 Mich. 569, much was said of the importance of determining whether the probate register's term was "fixed"

or "indefinite," it being held that if "fixed," cause must be shown for removal, but, if "indefinite," removal at will was permissible. Offices created by the Constitution and having a definite term cannot be vacated before the expiration thereof without a trial of some sort; but the legislative office or offices created by the legislature may be filled, vacated, or abolished as the legislature may prescribe. Cooley, Constitutional Limitations (3d Ed.), p. 312; 1 Dillon, Municipal Corporations (3d Ed.), §§ 245, 250.

The statute in question makes the term of office subject to the proviso "unless sooner removed by the judge of probate," thus placing removal within the discretion of the probate judge.

Defendants claim the trial court erred in ruling there was not sufficient showing to warrant a determination that plaintiff was barred from relief by laches. The trial court was right in holding:

"Laches is an affirmative defense, and no testimony bearing on this question of laches was offered aside from the fact that the bill was not filed until December 27, 1937, and that meanwhile another deputy register occupied the desk formerly occupied by plaintiff and performed the duties formerly performed by the plaintiff."

Mere lapse of time, without a showing of prejudice, will not constitute laches. *Cudahy Bros. Co.* v. *West Michigan Dock & Market Corp.,* 285 Mich. 18; *Kaminski* v. *Wayne County Board of Auditors,* 287 Mich. 62. There is nothing to indicate prejudice of defendants. Although a delay of 18 months was held to be laches in the case of *McGregor* v. *Carney,* 271 Mich. 278, the lapse of time was accompanied by a material change of circumstances—a change of administration.

Is Act No. 226, Pub. Acts 1933, constitutional? Is the basis of classification reasonable? It was held in *Hayes* v. *Auditor General,* 184 Mich. 39, that if it is a reasonable and logical basis of classification, considering the subject of the legislation, unquestionably a specified population may be made the test of the applicability of a general legislative act; and under such conditions the act will not be construed to be invalid as local legislation. But in *Attorney General, ex rel. Dingeman,* v. *Lacy,* 180 Mich. 329, it was held that where the subject is such that population has no obvious relation to the purpose sought to be accomplished, an attempt to make the application of a legislative act dependent on population is unwarranted and amounts to local legislation.

"The judicial doctrine of classification is that all cities having the same characteristics of a substantial equality of population should have the same corporate powers and be subject to the same restrictions although another class might be formed upon a substantial difference in population. (*State, ex rel. Knisely,* v. *Jones,* 66 Ohio St. 453 [64 N. E. 424, 90 Am. St. Rep. 592]). From this necessity for diverse powers, classification by population has been adopted, and has been recognized as creating a sufficient basis of generality for statutes relating to the affairs of cities. (*Waite* v. *Santa Cruz,* 184 U. S. 302 [22 Sup. Ct. 327], 89 Fed. 619; *State, ex rel. Rutgers,* v. *Mayor and Common Council of City of New Brunswick,* 42 N. J. Law, 51). But classification by population cannot be made arbitrarily and without reason. There must be some reason, in the nature of things, for the distinctions adopted. The size of the municipality as evidenced by its population must have a reasonable relation to the subject matter of the legislation, and must furnish some fairly apparent reason for legislation differing from that ap-

plicable to other municipalities having a substantial difference in population. If the population has no relation to the subject matter, a statute is not saved from want of generality merely because it is made applicable to all cities having a population within prescribed limits." 1 Dillon, Municipal Corporations (5th Ed.), § 151, p. 279.

In *People* v. *Brazee*, 183 Mich. 259, 267 (L. R. A. 1916 E, 1146), it is said:

"The contention of the respondent that the act in question violates article 5, § 30, of the State Constitution, in that under the guise of a general act it is really local legislation, is, in our opinion, untenable. It is true that it provides for a license fee of $100 in cities containing over 200,000 population, and but $25 in other cities, and it is likewise true that at the present time there is but one city in the State of Michigan which has a population of more than 200,000. This fact, however, is not necessarily controlling. The act operates upon all citizens alike, except that a larger sum is charged for the license in larger cities than in smaller ones. * * * It may well be that the legislature appreciated the fact that inspection for the purpose of proper regulation in large cities would be much more expensive than such inspection in smaller cities, and that the larger sum was fixed for the purpose of meeting such added expense of administration."

"If the classification is founded on correct principles, it is no objection that a class may contain but one county at the time the act is passed." 1 Lewis' Sutherland, Statutory Construction (2d Ed.), § 217.

See, also, *Stone* v. *Wilson*, 19 Ky. L. Rep. 126 (39 S. W. 49); *State, ex rel. Anderson*, v. *Sullivan*, 72 Minn. 126 (75 N. W. 8); *State* v. *Berkeley*, 64 S. C. 194 (41 S. E. 961); *Condon* v. *Maloney*, 108 Tenn. 82 (65 S. W. 871).

"The effect of all of our decisions, in short, has been that where there is a substantial difference in population, and the classification is made in good faith, reasonably related to the purpose to be effected and to the difference in population which forms the basis thereof, and not merely arbitrary, it is a general law, although at the time it may be applicable to only one political subdivision of the State; but that if the classification bears no reasonable relation to the difference in population, upon which it rests, in view of the purpose to be effected by such legislation, and clearly shows it was merely fixed arbitrarily, guised as a general law, and, in fact, is a local law, it is then in plain violation of the Constitution and cannot be upheld." *Reynolds* v. *Collier,* 204 Ala. 38 (85 South. 465).

See, also, *West Chicago Park Commissioners* v. *McMullen,* 134 Ill. 170 (25 N. E. 676, 10 L. R. A. 215) ; *City of Mt. Vernon* v. *Evens & Howard Fire Brick Co.,* 204 Ill. 32 (68 N. E. 208).

"Whatever diversity of views may have heretofore arisen, it is now authoritatively settled in this State that a general law is not unconstitutional because based upon classification of school districts according to population. *Burton* v. *Koch,* 184 Mich. 250." *MacQueen* v. *City Commission of City of Port Huron,* 194 Mich. 328, 341.

The Constitution (1908), art. 7, § 14, provides:

*"The legislature may provide by law for the election of more than one judge of probate in counties with more than one hundred thousand inhabitants."*

This is authority for legislative classification of probate judges according to population, and plaintiff admits it is a reasonable classification, but contends it is not proper to specify that probate courts having four judges should choose their presiding judges in

a manner different from that used by all other probate courts. It is apparent the administrative problems of a court having four judges may be different from those of courts having two or three judges. There is a greater possibility of conflict over seniority in point of service. As some basis for the classification exists, this court has no power to inquire into the wisdom of the legislative action.

In *Kates* v. *Reading,* 254 Mich. 158, an act establishing a consolidated justice court in cities having 250,000 or more population was differentiated from the act construed in *Mulloy* v. *Wayne County Board of Supervisors,* 246 Mich. 632.

"A class of cities or counties, based upon population, may be valid, though it embraces but one city or county, if others may come into the class on attaining the specified population." 1 Lewis' Sutherland, Statutory Construction (2d Ed.), § 215.

See, also, *City of Indianapolis* v. *Navin,* 151 Ind. 139 (47 N. E. 525, 51 N. E. 80, 41 L. R. A. 337); *People, ex rel. Henderson,* v. *Onahan,* 170 Ill. 449 (48 N. E. 1003); *Winston* v. *Stone,* 102 Ky. 423 (43 S. W. 397); *State, ex rel. Douglas County,* v. *Frank,* 60 Neb. 327 (83 N. W. 74); *People, ex rel. New York Electric Lines Co.,* v. *Squire,* 14 Daly (N. Y.), 154.

The act in question provides a specific method for its application to other counties as they acquire greater population. It would, therefore, seem to come within the rule set up in *Kates* v. *Reading, supra.*

See, also, *Owen* v. *City of Sioux City,* 91 Iowa, 190 (59 N. W. 3); *State* v. *Downs,* 60 Kan. 788 (57 Pac. 962); *Commonwealth* v. *E. H. Taylor, Jr., Co.,* 101 Ky. 325 (41 S. W. 11); *State, ex rel. Lionberger,* v. *Tolle,* 71 Mo. 645; *Coutieri* v. *Mayor and Common Council of the City of New Brunswick,* 44 N. J.

Law, 58; *State, ex rel. City of Columbus,* v. *Mitchell,* 31 Ohio St. 592; *Wheeler* v. *Philadelphia,* 77 Pa. 338; *State* v. *Berkeley, supra; State, ex rel. Risch,* v. *Board and Trustees of Policemen's Pension Fund,* 121 Wis. 44 (98 N. W. 954).

It is contended by plaintiff the "open end" provided in the act is closed by operation of two clauses contained therein, one that:

"A selection as herein provided shall be made within fifteen days of the effective date of this act;"

and the other:

"*Provided,* That any county that has failed to elect an additional probate judge, or judges, under this section, prior to July one, nineteen hundred thirty-two, shall be not entitled to elect any additional judge, or judges, under the provisions of this section."

If the legislature had intended the above clauses to prevent inclusion of counties subsequently acquiring the required population, it would not have provided a method for such inclusion. To adopt plaintiff's construction, it must be held that the legislature inserted provisions for inclusion of additional counties when they acquired the requisite population, knowing such provisions were nullified by the clauses pointed out. An interpretation of a statutory provision which gives effect to all of its provisions is favored: *Lovalo* v. *Michigan Stamping Co.,* 202 Mich. 85; *Taylor* v. *Isabella Circuit Judge,* 209 Mich. 97; *Chicago, Detroit & C. G. T. J. R. Co.* v. *Simons,* 210 Mich. 418; *Potter* v. *Safford,* 50 Mich 46; *Robinson* v. *Harmon,* 157 Mich. 266.

"It is the duty of courts, so far as practicable, to reconcile the different provisions of a statute so as to make the whole of it consistent and harmo-

nious; and where this is impossible, to give effect to what was manifestly the intention of the legislature." *Attorney General, ex rel. McKay,* v. *Detroit & Erin Plank Road Co.* (syllabus), 2 Mich. 139.

"Statutes should be so construed, if possible, as to give full effect to every part and render no portion nugatory, every clause and word being presumed to have some force and meaning." *Attorney General, ex rel. Zacharias,* v. *Board of Education of City of Detroit* (syllabus), 154 Mich. 584.

See, also, *Rohde* v. *Wayne Circuit Judge,* 168 Mich. 683; *Bloomshield* v. *City of Bay City,* 192 Mich. 488.

The clauses pointed out were to promote speedy action on the part of counties having the required population.

We think Act No. 226, Pub. Acts 1933, is constitutional; that the judge chosen by his colleagues to exercise the power of appointment, nomination, and removal, for the year, is the one to exercise such power; that removals from the office here in question may be made without cause; that plaintiff is not estopped by laches.

Decree reversed, and bill dismissed, but without costs, a public question being involved.

BUSHNELL, SHARPE, CHANDLER, and McALLISTER, JJ., concurred with POTTER, J.

WIEST, J. (*concurring*). I join in accepting and applying the views of Mr. Justice BUTZEL in *Drolshagen* v. *County of Wayne,* 283 Mich. 569, and, therefore, concur in the result of Mr. Justice POTTER's opinion.

BUTZEL, C. J., concurred with WIEST, J. NORTH, J., took no part in this decision.